**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| |
|---|
| **In re:** |
| **O'Brien Energy Resources Corporation** |
| **Debtor** |

**Chapter 11**
**Case No. 26-10092-KB**

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY BCM ADVISORY GROUP, LLC AND JASON MILLS AS CHIEF RESTRUCTURING OFFICER AS OF APRIL 29, 2026**

Pursuant to 28 U.S.C. § 586, 11 U.S.C. §§ 327, 328 and 363, William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**"), hereby objects to the *Debtor's Application for Authority to Employ BCM Advisory Group, LLC and Jason Mills as Chief Restructuring Officer as of April 29, 2026* [ECF No. 104] ("**Application to Employ**") as follows:

**Preliminary Statement**

On May 15, 2026, the Debtor filed the Application to Employ BCM Advisory Group ("**BCM**") and Jason Mills ("**Mr. Mills**") as Chief Restructuring Officer under § 327 of the Bankruptcy Code effective as of April 29, 2026, the date of his retention by the Debtor. Because Mr. Mills is an officer and insider of the Debtor, he is not disinterested and is disqualified from employment under § 327. Mr. Mills' disqualifying conflict is imputed to BCM and renders BCM ineligible to be retained under § 327 as well. The United States Trustee objects that, if employment is approved, such approval should be based on a finding that the Application satisfies the requirements of § 363 of the Bankruptcy Code, and should not be based on § 327, a section under which the applicants are statutorily ineligible to be retained.

The United States Trustee further objects to the Application to Employ on the grounds that the applicants have failed to establish that the receipt of a $10,000 retainer from an employee of

the Debtor does not constitute an impermissible conflict of interest under the multi-factored test applied by bankruptcy courts in evaluating compensation payments from a third-party. *See In re Lar Dan Enterprises, Inc.*, 221 B.R. 93, 96 (Bankr. S.D.N.Y. 1998) (citing five-factored test).

## Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

1.      The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this district under 28 U.S.C. § 1408.

2.      The Court has constitutional authority to enter a final order in this matter.  If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the United States Trustee consents to the entry of a final order or judgment by this Court in this matter.

## Background

3.      On January 30, 2026 ("**Petition Date**"), O'Brien Energy Resources Corporation ("**Debtor**") filed a voluntary chapter 11 petition with the Court.

4.      The Debtor filed the Application to Employ on May 15, 2026.  ECF No. 104.  By the Application to Employ, the Debtor seeks to employ and retain BCM and Mr. Mills as Chief Restructuring Officer effective as of April 29, 2026.

5.      According to the Application, "the Debtor retained BCM as an advisory professional, to serve essentially as its chief restructuring officer to assist with the Bankruptcy Case on or about April 29, 2026."  ECF No. 104, p. 2.  A copy of the engagement letter ("**Engagement Letter**") is attached to the Application as Exhibit 2.  ECF No. 104-3, p. 13.

6.      Upon its retention, BCM received a $10,000 retainer, paid by Arlene Desrosiers, an employee of the Debtor.  ECF No. 104, p. 7; ECF No. 104-3, p.2.

**Objection Regarding Application for Retention Under 11 U.S.C. § 327(a)**

7.      Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

12.      Section 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code, defines disinterested persons as those persons who:

A.   are not creditors, equity security holders, or insiders of the Debtor;

B.   are not, and were not, within two years before the Petition Date, a director, officer or employee of the Debtor; and

C.   do not have an interest materially adverse to the interest of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

Where the debtor is a "corporation," the term "insider" includes "officer of the debtor" and "person in control of the debtor."  11 U.S.C. § 101(31)(B)(ii-iii).  The Debtor is a corporation as defined under § 101(9).

13.      Despite the breadth of § 327(a), not all persons who provide services or who are employed by the debtor during a bankruptcy case are necessarily "professionals" subject to that section.  Whether a service provider qualifies as an "other professional" under § 327(a) is a fact-intensive inquiry, and "courts have struggled to identify clear principles to use to determine whether a given employee is an 'other professional' who must be retained under § 327(a)." *In re Brookstone Holdings Corp.*, 592 B.R. 27, 35 (Bankr. D. Del. 2018). "While the quantitative test focuses on the significance of the individual's role to the debtor proceeding and the qualitative test

focuses on the amount of discretion the individual has in accomplishing that role, the bottom line of both tests involves an examination of the types of duties to be undertaken . . . ." *In re First Merchants Acceptance Corp*., No. 97-1500, 1997 WL 873551, at *2 (D. Del. Dec. 15, 1997).

14.     The question of whether persons should be treated as "professionals" under § 327(a) has proven to be especially difficult with respect to restructuring specialists such as BCM and Mr. Mills, who work in an industry that did not exist (and was not likely foreseen) in 1978, when § 327 was enacted.  This analysis is further complicated by the fact that in most instances, advisors such as Mr. Mills are hybrids, who resemble outside professionals for some purposes, but who are more similar to internal officers and employees for others.  *See generally Role of the Chief Restructuring Officer in Bankruptcy: Overview*, Practical Law Practice Note Overview w-001-1449 (available on Westlaw.com) (noting that in contrast to bankruptcy counsel, "the CRO's role can be amorphous").

15.     To the extent that they are not professionals subject to § 327, the employment of persons such as BCM and Mr. Mills is governed by the bankruptcy court's residual authority to approve transactions outside the ordinary course of business under § 363(b) of the Bankruptcy Code.[1]  Although § 363 lacks many of the mandatory procedural and substantive requirements that would be triggered by § 327, this does not mean that § 363 employment should be governed by *ad hoc* legal standards, or by no standards at all.  Rather, consistent with its authority under that section, the Court may—and should—condition employment under § 363 on the implementation of appropriate safeguards sufficient to protect the integrity of and confidence in the bankruptcy

---

[1]     Because the hiring of a crisis manager or restructuring advisor usually occurs only under extraordinary circumstances, the United States Trustee notes that these transactions are, by their nature, outside the ordinary course of business—and that § 363(b), rather § 363(c), provides the appropriate legal standard in the event that § 327 is inapplicable.

system.[2] *See, e.g., In re Gulf Coast Oil Corp.*, 404 B.R. 407, 423 (Bankr. S.D. Tex. 2009) (in deciding motion under § 363(b), court should consider whether terms of transaction contain safeguards to protect the rights of parties); *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 593 (Bankr. D. Ariz. 2009) (holding that debtor may not sell estate property through § 363 under terms that would violate fundamental policies of the Bankruptcy Code).

16.     The Application cannot be approved under § 327, as it is currently styled, because BCM and Mr. Mills are statutorily ineligible to be retained under that section.   This is a consequence of Mr. Mill's service as an officer of the Debtor, which as a matter of law renders him not disinterested.  And his status as a non-disinterested person is imputed to BCM, and BCM, therefore, may not be retained under § 327, which contains a strict requirement of disinterestedness.  *See* 11 U.S.C. §§ 101(14), 101(31)(B), and 327.

17.     For purposes of § 327(a), Congress created a categorical rule of disqualification for officers, expressly declining case-by-case determinations of whether service as an officer of the debtor corporation gives rise to a disqualifying "interest" inquiry.  *See* 11 U.S.C. §§ 101(14), 327(a); *see also In the Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 n.6 (5th Cir. 1986) ("The standards for the employment of professional persons are strict, for Congress has

---

[2]  Consistent with this view, it has long been the practice of the United States Trustee Program not to object to applications to employ chief restructuring officers under § 363, provided that the terms of the engagement contain safeguards that substantially replicate the protections provided by § 327, other than certain requirements for disinterestedness (which, as discussed below, most CROs cannot meet due to their status as pre-petition officers).  In order to provide uniformity and predictability, since 2001 the United States Trustee Program has set out a list of required safeguards in a document that has become known as the J. Alix Protocol.  *See* White, Harrington, & Eitel, *Future of USTP's CRO Protocol*, ABI Journal (Sep. 2018).  The J. Alix protocol is simply a statement of the United States Trustee Program's litigation position and does not have the force of law.  Nevertheless, in the experience of the United States Trustee, the J. Alix protocol has benefitted debtors and the bankruptcy system over the past two decades by improving transparency and preventing conflicts of interest, while providing predictability to chapter 11 debtors and their advisors.

determined that strict standards are necessary in light of the unique nature of the bankruptcy process"). "Congress in enacting section [101(14)(B)] apparently believed that service as an officer or director of a debtor within the two years before the bankruptcy case was filed would affect 'the essential character of independence and disinterestedness which is required' of counsel for the estate." *In re Essential Therapeutics, Inc.*, 295 B.R. 203, 210 (Bankr. D. Del. 2003).

### A. Mr. Mills Is an Officer and an Insider of the Debtor and Is *Per Se* Not Disinterested.

18. Mr. Mills is now, and since April 29, 2026 has been, an officer of the Debtor as evidenced by the Engagement Letter attached to the Application and is *per se* an officer and not disinterested. Indeed, his title, Chief Restructuring Officer, includes the very word "officer."

19. Although the Bankruptcy Code does not define the term "officer," plain meaning suggests that one who has the title officer is indeed an officer. "An officer is a 'person holding office and taking part in the management or direction of a society or institution . . . .'" *In re Foothills Texas, Inc.*, 408 B.R. 573, 579 (Bankr. D. Del. 2009) (discussing officer and insider status with respect to retention bonuses). Relying on the plain meaning of words, the court in *Foothills Texas* framed the question as whether the individual is "taking part in the management of the debtor." *Id.* It further rejected the argument that "the meaning of 'officer' should vary according to the context in which the word is used" because that would "alter its meaning depending upon its application and effect." *Id.* at 583. Thus, an officer for one purpose should be an officer for all purposes.

20. Even if this Court were to find that the title of officer is not dispositive of officer status, it is at the least a rebuttable presumption: A "person holding the title of an officer, including a vice president, is presumptively what he or she appears to be—an officer and, thus, an insider. To overcome that presumption requires the submission of evidence sufficient to establish that the

officer does not, in fact, participate in the management of the debtor." *Foothills Texas*, 408 B.R. at 583.

21.     In *Foothills Texas,* the court found debtors did not overcome the presumption that two executive vice presidents were officers even though they were not "members of senior management and they [did] not play a role in the management of the company as a whole." *Id.* at 584. Rather, they were "in charge of important aspects of the Debtors' business . . . ," and each reported directly to the debtors' president. *Id.*

22.     Under either a *per se* rule or a rebuttable presumption, Mr. Mills is an officer. The Debtor has presented no evidence to rebut the presumption that Mr. Mills, who holds the title of officer, participates in the management of the Debtor. To the contrary, the Engagement Letter filed with the Application establishes that in his role as Chief Restructuring Officer, Mr. Mills and BCM "will be given decision-making authority so that it can act and negotiate on behalf of the [Debtor]." ECF 104-3 at p. 13. "BCM's role is to serve as a bankruptcy-specific advisor for the Debtor and to assume a 'chief restructuring officer' role in facilitating the Debtor's successful reorganization. ECF No. 104, p. 6. The Debtor "expects that the seasoned advice of BMC will guide that decision making in the Debtor's broad effort to restructure…[its] business." *Id.* [3]

23.     Thus, as an officer, either because of his title or his duties or both, Mr. Mills is not disinterested. [4]

---

[3]     For many of the same reasons that Mr. Mills is an officer, he is also a person in control of the Debtor, which renders him an insider and not disinterested. *See* 11 U.S.C. § 101(14) and 101(31)(B)(iii).

[4]     Once a person is found to be an officer, he or she is automatically deemed not disinterested, and the Court need not proceed further to determine whether the person is also an insider, which is an independent basis for finding someone not disinterested. Nevertheless, being an officer also automatically renders one an insider under § 101(31)(B)(ii) and thus not disinterested for this additional reason. 11 U.S.C. § 101(14)(A). "Congress has explicitly stated that an officer is an insider. Having been found to be the former, one must be the latter.

### B. Mr. Mills' Non-Disinterested Status Is Imputed to BCM and Renders BCM Ineligible for Employment Under § 327.

24.     Mr. Mills' service as an officer and status as an insider of the Debtor is a disqualifying conflict that renders BCM ineligible to be retained under § 327 because his conflict should be imputed to the entire BCM firm.  *See Essential Therapeutics*, 295 B.R. at 208 -211; *but see In re Cygnus Oil & Gas Corp.,* 2007 WL 1580111 (Bankr. S.D. Tex. May 29, 2007).  Because only natural persons (and not firms) may serve as corporate officers, the plain language of § 327's and § 101(14)'s disinterestedness requirement must be read to disqualify firms that—like BCM in this case—are subject to the "interest" created by their member's service as an officer of the debtor.[5]  A firm composed of individuals that are not disinterested cannot itself be disinterested.

---

Thus, under the plain meaning of the statute an officer is, per se, an insider." *Foothills Texas*, 408 B.R. at 583.  *See also In re N&D Properties, Inc.,* 799 F.2d 726, 732 (11th Cir. 1986) (once person became secretary, she was an insider, and it was irrelevant whether she controlled debtor); *In re PHS Group Inc.,* 581 B.R. 16, 31(Bankr. E.D.N.Y. 2018) ("Unlike the statutory insider [those listed in section 101(31)(B)], an employee's title alone will not dictate their status as an insider for Wagoner purposes."); *In re Cardon Realty Corp.*, 146 B.R. 72, 78 (Bankr. W.D.N.Y. 1992) (finding it irrelevant to the officer's status as an insider whether officer determined corporate policy, "actually 'controlled'" the debtor, or involved herself in its management).

Moreover, because the list of insiders in § 101(31) is illustrative, not exhaustive, courts may sometimes examine the closeness of a person's relationship to a debtor to determine if a person not included in the statutory list may nevertheless be deemed an insider, a so-called "non-statutory insider." *Magers v. Bonds* (*In re Bonds Distrib. Co.*), 2000 WL 33673768, *4 (Bankr. M.D.N.C. Mar. 31, 2000) (holding that the Code "clearly and unambiguously includes a director" in the definition of insider notwithstanding that the defendant did not act like a director).  But this is not license to *subtract* from the list and *disregard* those persons listed as insiders because they are "automatically considered to be an insider." *Id.* (quoting *In re Babcock Dairy Co. of Ohio, Inc.,* 70 B.R. 657, 660 (Bankr. N.D. Ohio 1986)).

5    *See generally In re Nine West Holdings, Inc.*, 588 B.R. 678, 691 (Bankr. S.D.N.Y. 2018).  If restructuring officers and their firms cannot be retained under § 363, "firms that previously provided firm personnel to fill necessary management roles at the company must be jettisoned when the company files for chapter 11 by virtue of the fact that, having served as officers of

To the contrary, a firm's "interest" (created by the "interest" of its managing member who was and is an officer of the Debtor) by its nature can erode the firm's inclination to pursue the interests of the bankruptcy estate—the true "client" of the advisor to a debtor-in-possession.

25. Although *In re Cygnus Oil & Gas Corp.*, 2007 WL 1580111 (May 29, 2007 Bankr. S.D. Tex.), an unreported decision, held that Congress did not intend *per se* imputation of one professional's relationship with a debtor to an entire firm under § 101(14)(A) or (B), the court did find that such a relationship should be examined under § 101(14)(C) as an indirect relationship that could cause the firm to have a material adverse interest. *Id.* at *2-3. The court did not find such an interest in *Cygnus*; nevertheless, the facts of that case evidence why such a finding is appropriate here. In *Cygnus*, the professional at issue was no longer a director of the debtor, would have "no role whatsoever in the representation of the Debtors," and would be "walled off" from the representation. *Id*. at *3. In this case, far from having no role with the Debtor or the bankruptcy engagement, Mr. Mills is currently acting as an officer of the Debtor with decision-making authority over many aspects of the bankruptcy case.

26. "The requirement of disinterestedness 'appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code . . . . Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration . . . .'" *Consolidated Bancshares,* 785 F.2d at 1256 (citing *2 Collier on Bankruptcy*

---

the debtor, the firm and its personnel are arguably not disinterested within the meaning of section 101(14) and thus cannot be retained under section 327(a)."

§ 327.03 at 327–19, 20 (15th ed. 1985) (footnotes omitted)).  Under these circumstances, BCM is not disinterested, and thus cannot be retained under § 327.

27.     The United States Trustee notes that this is not a case where BCM is categorically ineligible to serve at all.  Rather, it appears that under the circumstances of this case, BCM may be employed, but not under § 327, the specific statutory section on which the Debtor relies.  And because there appears to be a different statutory provision that is fully sufficient to authorize the relief sought in the Application, there is little justification for rewriting or weakening § 327 here— particularly since doing so may have unintended negative consequences in other matters pertaining to that same section.

28.     The United States Trustee requests that if employment is authorized under § 363, that the Court enter an order containing the safeguards set forth in the proposed order filed herewith as **Exhibit A**.

#### C.     The Receipt of a Third-Party Retainer May Constitute an Impermissible Conflict of Interest.

29.     Upon its retention, BCM received a $10,000 retainer paid by Arlene Desrosiers, an employee of the Debtor.  ECF No. 104, p. 7; ECF No. 104-3, p.2.  The United States Trustee objects to the Application to Employ on the grounds that the applicants have not provided sufficient record evidence addressing the factors courts consider in determining whether such compensation constitutes an impermissible conflict of interest.  *See, e.g., In re Lar Dan Enterprises, Inc.*, 221 B.R. 93, 96 (Bankr. S.D.N.Y. 1998) (citing factors).  These factors include the following:

> (1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider; (2) the debtor must expressly consent to the arrangement; (3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client; (4) the factual and legal relationship among the third party payor/insider, the debtor, the respective attorneys, and

their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation; (5) the debtor's attorney/applicant must demonstrate and represent, to the court's satisfaction, the absence of facts which otherwise create non disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

*In re Lan Dan Enters., Inc*., 221 B.R. at 96.  In the absence of an appropriate affidavit or declaration consistent with the decision in *Lar Dan Enterprises*, 221 B.R. 93, 95 (Bankr. S.D.N.Y. 1998), establishing, among other things, that there are no facts that would "otherwise create nondisinterestedness, actual conflict, or impermissible potential for conflict of interest," the Application to Employ should not be granted.

WHEREFORE, the United States Trustee objects to the *Debtor's Application for Authority to Employ BCM Advisory Group, LLC and Jason Mills as Chief Restructuring Officer as of April 29, 2026* [ECF No. 104].

Dated: June 3, 2026                                    Respectfully submitted,

                                                       WILLIAM K. HARRINGTON,
                                                       UNITED STATES TRUSTEE

                                     By:    */s/ Ann Marie Dirsa*
                                            Ann Marie Dirsa BNH#06121
                                            Office of the United States Trustee
                                            53 Pleasant Street, Suite 2300
                                            Concord, NH  03301
                                            (603) 333-2781

### CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I served copies of the foregoing pleading(s) entitled <u>United States Trustee's Objection to Debtor's Application for Authority to Employ BCM Advisory Group, LLC and Jason Mills as Chief Restructuring Officer as of April 29, 2026</u> to all parties named below by United States first class postage prepaid mail at the address(es) listed or in such other manner as I have indicated:

Via the Court's CM/ECF system to:      Demetrio F. Aspiras, III
Ryan M. Borden
Matthew J. Delude
Jacqueline M Doyle
Kellie W. Fisher
Jonathan M. Hixon
Daron L. Janis
Mark D. Kanakis
Brad C. Knapp
Omer F. Kuebel, III
Andrew G. Macchione
Stephen T. Martin
Jeffrey T. Piampiano
Adam R. Prescott
Richard R. Rousseau
Craig B. Rule

Via U.S. Mail, postage prepaid to:      N/A

I, <u>Ann Marie Dirsa</u>, certify that I am eighteen (18) years of age or older, and under penalty of perjury, that the foregoing is true and correct.

Dated: June 3, 2026                          */s/ Ann Marie Dirsa*
Ann Marie Dirsa BNH#06121
Office of the United States Trustee
53 Pleasant Street, Suite 2300
Concord, NH  03301
(603) 333-2781

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **In re:**<br><br>**O'Brien Energy Resources Corporation**<br><br>**Debtor** | **Chapter 11**<br>**Case No. 26-10092-KB** |

**ORDER GRANTING DEBTOR'S APPLICTION FOR AUTHORITY**
**TO EMPLOY BCM ADVISORY GROUP, LLC AND JASON MILLS**
**AS CHIEF RESTRUCTURING OFFICER AS OF APRIL 29, 2026**

Upon consideration of the Debtor's Application for Authority to Employ BCM Advisory Group, LLC and Jason Mills as Chief Restructuring Officer as of April 29, 2026 (the "**Motion**") and any response(s) to the Motion, after due and proper notice of the motion was given and a hearing was held on the Motion, it is ORDERED that:

1.      The Motion is GRANTED under the provisions of 11 U.S.C. § 363(b) as modified herein.

2.      The Debtor is authorized to engage BCM Advisory Group, LLC and Jason Mills (collectively, "**BCM**") on the terms described in the Motion, subject to the following terms, which apply notwithstanding anything in the Motion or any exhibit(s) related thereto to the contrary:

(a.)     BCM and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned case.

(b.)     In the event the Debtor seeks to have BCM personnel assume executive officer positions that are different than the position disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or

expanding the scope of the engagement, a motion to modify the retention shall be filed.

(c.)   BCM shall file with the Court with copies to the United States Trustee ("**U.S. Trustee**") and all official committees a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.

(d.)   No principal, employee or independent contractor of BCM and its affiliates shall serve as a director of the above-captioned Debtor during the pendency of the above-captioned case.

(e.)   BCM shall file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred.  Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments.  All compensation shall be subject to review by the Court in the event an

objection is filed.  At the conclusion of its engagement, BCM shall file with the Court a final fee application to be reviewed and approved on a reasonableness standard.

(f.)     Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order.  No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

(g.)     The Debtor is permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policy.

(h.)     There shall be no indemnification of BCM or its affiliates.

(i.)     For a period of three years after the conclusion of the engagement, neither BCM nor any of its affiliates shall make any investments in the Debtor or the Reorganized Debtor.

(j.)     BCM shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest.  The obligation to disclose identified in this subparagraph is a continuing obligation.